1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

DENIESE H.

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendants.

Case No. C19-5791 TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11      Plaintiff has brought this matter for judicial review of defendant's denial of

12  plaintiff's application for Supplemental Security Income disability benefits.

13      The parties have consented to have this matter heard by the undersigned

14  Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

15  MJR 13. For the reasons set forth below, the Court REVERSES and REMANDS

16  defendant's decision to deny benefits.

17                          ISSUES FOR REVIEW

18      1.  Did the ALJ properly evaluate Dr. Wingate's opinion?
        2.  Did the ALJ properly evaluate Dr. Hander's opinion?
19      3.  Did the ALJ properly evaluate lay witness testimony?
        4.  Did the ALJ properly evaluate plaintiff's testimony?
20      5.  Did the ALJ err in determining plaintiff's Residual Functional Capacity("RFC")
            and at the ALJ's Step Five findings?

21

22

23

24

25

1

BACKGROUND

2       On June 2, 2016 plaintiff filed a claim for a period of disability and disability

3   benefits alleging an onset date of February 20, 2015. AR 356-62. Plaintiff's application

4   was denied upon initial administrative review and on reconsideration. AR 288-98. A

5   hearing was held before Administrative Law Judge ("ALJ") Allen G. Erickson. AR 68-

6   167. On June 22, 2018, the ALJ issued a written decision finding that plaintiff was not

7   disabled. AR 48-67.

8       The ALJ found that plaintiff has the severe, medically determinable impairments

9   of fibromyalgia, obesity, depressive disorder, and anxiety disorder. AR 53. Based on the

10  limitations stemming from these impairments, the ALJ found that plaintiff can perform

11  light work with additional limitations. AR 56. The ALJ found that plaintiff can occasionally

12  climb ladders, ropes and scaffolding and occasionally crawl. AR 56. The ALJ also found

13  that plaintiff can withstand occasional exposure to hazards, vibrations and temperature

14  and humidity extremes. AR 56. Further, the ALJ found that plaintiff can engage in

15  frequent, but not continuous, handling and fingering bilaterally. AR 56. Finally, the ALJ

16  determined that plaintiff can understand, remember and apply detailed, but not complex,

17  instructions, but not in a fast-paced, production type environment. AR 56.

18      Relying on the plaintiff's testimony and the vocational expert's testimony, the ALJ

19  determined that plaintiff is unable to perform past relevant work, but is capable of

20  performing jobs existing in significant numbers in the national economy. AR 60.

21  Accordingly, the ALJ determined that plaintiff is not disabled. AR 61.

22      Plaintiff seeks judicial review of the ALJ's June 22, 2018 decision. Dkt. 1.

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

DISCUSSION

A.  Medical Evidence

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth Circuit law, opinions from non-examining medical sources that contradict a treating physician's opinion will trigger the "specific and legitimate reasons" standard of review. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (requiring only specific and legitimate reasons where treating doctor's opinion was "contradicted by the findings of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to some extent, the opinion of Dr. Ruggeri, the hand specialist").

"Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating or

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion). An ALJ need not accept a medical opinion that is brief and conclusory when the ALJ faces conflicting evidence regarding the claimant's condition. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

     1.  <u>Dr. Wingate</u>

     Terilee Wingate PhD examined plaintiff on August 15, 2016 and provided a psychological evaluation. AR 592-598. Dr. Wingate administered the Wechsler Memory Scale IV, and Trail Making Test to evaluate learning and memory. AR 594-595. Dr. Wingate diagnosed an unspecified depressive disorder, and unspecified anxiety disorder. AR 595. Among other findings, Dr. Wingate opined that plaintiff is able to "understand, remember and learn simple and some complex tasks", but also would have "difficulty sustaining attention to tasks through a daily or weekly schedule without interruption from anxiety, depressed mood, fatigue and inattention". AR 596.

     The ALJ gave Dr. Wingate's opinion some weight, finding that the opinion is consistent with the overall record. AR 59. However, the ALJ discounted Dr. Wingate's opinion that plaintiff may have difficulty sustaining attention to tasks throughout a daily work schedule. AR 59. The ALJ stated that this opinion was inconsistent with Dr. Wingate's own exam, with other exams revealing normal concentration and with plaintiff's activities indicating adequate concentration and attention. AR 59.

     As to the first reason, the ALJ's decision is not supported by the record. Dr. Wingate found that plaintiff's memory was average to low average. AR 595. Dr. Wingate

1    also found that plaintiff has difficulty with complexity and the ability to shift attention. AR

2    595. Dr. Wingate opined that plaintiff has difficulty sustaining concentration to tasks

3    during a daily or weekly work schedule without interruption from anxiety, depressed

4    mood, fatigue and inattention. AR 596. The fact that plaintiff has average memory, was

5    able to recall some information after a 20-30 minute delay and was able to complete a

6    one-time psychological evaluation does not contradict an opinion that plaintiff would

7    struggle to maintain concentration and stay on tasks during an entire workday or week.

8         The ALJ's second reason is also unsupported by the record. The ALJ cites to a

9    single record indicating normal concentration. AR 59, 971. The record indicates that

10    plaintiff sought emergency medical services for severe pelvic pain. AR 968. The treating

11    doctor noted that plaintiff displayed normal affect, normal insight and normal

12    concentration. AR 971.  The fact that plaintiff had normal concentration during an

13    emergency room visit, when speaking to an emergency room physician, does not

14    indicate whether plaintiff would be able to maintain the same level of concentration

15    during an entire day or week. Accordingly, this record does not contradict Dr. Wingate's

16    opinion regarding plaintiff's concentration.

17         The final reason provided by the ALJ is also unsupported by the record. The ALJ

18    found that plaintiff's activities such as shopping, using a computer and completing some

19    household cleaning such as laundry undermined Dr. Wingate's opinion. AR 59. The ALJ

20    cites to activities that plaintiff described in her adult function reports. AR 59, 382-389,

21    431-438.

22         Plaintiff's first functional report lists her daily activities as "wake up, use restroom,

23    feed animals, do dishes, rest, eat, rest, try and do laundry, rest, take a shower go to

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

1   bed." AR 383. Plaintiff also states that she is unable to prepare meals because she is

2   too tired and will forget what she is doing while preparing meals. AR 384. Plaintiff's

3   report also indicates that she has difficulty with written instructions and must reread

4   things multiple times. AR 387.

5         Plaintiff's second report indicates that she has difficulties with washing dishes

6   because she forgets what she is doing. AR 431. The report also indicates that plaintiff

7   takes breaks and rests between activities during the day. AR 432. Plaintiff's adult

8   function reports do not indicate that plaintiff is able to maintain concentration during an

9   entire workday or week and do not contradict Dr. Wingate's opinion.

10         Based on the foregoing discussion, the ALJ erred in evaluating Dr. Wingate's

11   opinion. This error was not harmless -- the ALJ should reconsider Dr. Wingate's opinion,

12   and decide whether the plaintiff's limitations are actually more severe, as determined by

13   Dr. Wingate; this could potentially lead to an adjustment of the RFC.

14         2.  Dr. Hander

15         The ALJ did not err in evaluating the opinions of Dr. Hander.

16         Dr. Robert Hander is a State agency medical consultant. AR 58. On December 2,

17   2016, Dr. Hander reviewed plaintiff's medical records and opined that plaintiff can

18   occasionally and frequently lift/carry ten pounds, could stand and/or walk for a total of

19   two hours, and sit for a total of six hours in an eight-hour workday. AR 273. Dr. Hander

20   also opined that plaintiff can frequently climb ramps and stairs, and balance. AR 273.

21   Next. Dr. Hander opined that plaintiff can occasionally, climb ladders, ropes and

22   scaffolds, stoop, kneel and crawl. AR 273. Finally, Dr. Hander stated that plaintiff has

23   limitations caused by plaintiff's limited field of vision. AR 274.

24

25

1    The ALJ adopted some of Dr. Hander's postural limitations finding that plaintiff

2    can only occasionally climb ladders, ropes and scaffolds, and can only occasionally

3    crawl. AR 56. The ALJ discredited the remainder of Dr. Hander's opinion. AR 59. The

4    ALJ reasoned that Dr. Hander's opinion was inconsistent with records showing normal

5    visual acuity with over-the-counter glasses. AR 59. The ALJ also reasoned that Dr.

6    Hander's opined physical limitations were inconsistent with plaintiff's unremarkable

7    physical exam findings. AR 59. Plaintiff challenges the ALJ's rejection of Dr. Hander's

8    opinion that plaintiff can only stand/walk for two hours, can only sit for six hours, can

9    only lift ten pounds, and certain postural limitations. Dkt. 14 at 7-9.

10    With respect to the ALJ's first reason, an inconsistency with the medical record

11    can serve as a specific and legitimate reason for discounting limitations assessed by a

12    physician. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more

13    consistent a medical opinion is with the record as a whole, the more weight [the Social

14    Security Administration] will give to that medical opinion."); *Ghanim v. Colvin*, 763 F.3d

15    1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to medical opinions that

16    conflict with treatment notes).

17    The ALJ cited to a number of records from March 28, 2016 to December 18,

18    2017. AR 59. These records indicate that plaintiff was diagnosed with fibromyalgia,

19    there were mild findings of arthritis in plaintiff's left knee, and the records show

20    improvement with treatment. AR 1329-1335 (June 2016 treatment notes diagnosing

21    fibromyalgia and indicating mild diagnostic imaging results); AR 1238-1242 (November

22    21, 2016 treatment notes finding mild osteoarthritis, administering cortisone injection

23    and recommending low impact activity to manage condition.); AR 1246 (November 27,

24

25

2016 treatment note, plaintiff states that the cortisone injection in her knee has "helped tremendously"); AR 1233-1237 (November 29, 2016 treatment note finding mild osteoarthritis with no significant joint space narrowing and recommending conservative treatment. The treatment note also indicates no structural problems with plaintiff's left knee and encouraged plaintiff to continue low impact activity to manage symptoms. Plaintiff indicated that she was feeling great after the cortisone injection.); AR 1218-1225 (January 2017 treatment notes indicating that plaintiff's fibromyalgia was stable, and symptoms markedly improved with medication); AR 1316-1318 (March 2017 treatment notes indicating normal findings with mild osteoarthritis); AR 1211-1214 (May 2017 treatment notes indicating that plaintiff reported the cortisone injections worked well and recommending conservative treatment to manage condition); AR 1202-1210 (June 2017 treatment notes indicating that plaintiff's fibromyalgia and arthritis symptoms are managed with medication and recommending plaintiff continue current medication).

Dr. Hander cited to plaintiff's pain symptoms as supporting a finding of sedentary exertional limitations. AR 272-273. The records cited by the ALJ indicate mild findings before Dr. Hander's report and indicate improvement with medications after Dr. Hander's report. Accordingly, the ALJ's conclusion that Dr. Hander's findings were inconsistent with the medical record is supported by the record.

B. Lay Witness Testimony

Next, plaintiff contends that the ALJ erred in discrediting the lay witness statement of plaintiff's caregiver. Dkt. 14 at 10-12. Plaintiff's caregiver submitted a letter stating that she is a state-funded caregiver hired to assist plaintiff due to plaintiff's pain symptoms. AR 1319. Plaintiff's caregiver stated she has observed plaintiff struggling

1  around the home, having problems sitting and standing for prolonged periods, and

2  difficulty using her arms, due to pain. AR 1319. The ALJ gave little weight to plaintiff's

3  caregiver's statements because 1) the caregiver's assertions are inconsistent with the

4  record showing unremarkable findings, 2) the caregiver's statement is inconsistent with

5  plaintiff's activities, and 3) the caregiver was not an acceptable medical source. AR 59.

6      Lay testimony regarding a claimant's symptoms "is competent evidence that an

7  ALJ must take into account," unless the ALJ "expressly determines to disregard such

8  testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236

9  F.3d 503, 511 (9th Cir. 2001). In rejecting lay witness testimony, the ALJ is not required

10  to cite the specific supporting documents as long as "arguably germane reasons" for

11  dismissing the testimony are noted. *Id.* at 512.

12      The ALJ cited to medical records indicating mild findings and that plaintiff's pain

13  symptoms were managed with treatment. AR 59. By noting inconsistency between the

14  opinion of plaintiff's caregiver and the medical record, the ALJ has provided a germane

15  reason for discounting the lay witness opinion. *See, Baylis v. Barnhart*, 427 F.3d 1211,

16  1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is germane reason for

17  discrediting lay testimony").

18      Because the ALJ's first reason is supported by the record, any error regarding

19  the other reasons provided would be harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115

20  (9th Cir. 2012).

21      C. Plaintiff's Testimony

22      Finally, plaintiff argues that the ALJ erred in discounting plaintiff's subjective

23  claims about symptoms and limitations. Dkt. 14 at 12-13. Plaintiff argues that the ALJ

24

25

1   erred because plaintiff's subjective statements were supported by the statement of

2   plaintiff's caregiver, and by the opinions of Dr. Wingate and Dr. Hander. Dkt. 14 at 13.

3   　　　In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*

4   *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether

5   there is objective medical evidence of an underlying impairment that could reasonably

6   be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763

7   F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied and there is no evidence of

8   malingering, the second step allows the ALJ to reject the claimant's testimony of the

9   severity of symptoms if the ALJ provides specific findings and clear and convincing

10  reasons for rejecting the claimant's testimony. *Id.*

11  　　　If the ALJ's decision is based on a rational interpretation of conflicting evidence,

12  the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533

13  F.3d 1155, 1165 (9th Cir. 2008). Further, "if the evidence admits of more than one

14  rational interpretation," the Court must uphold the ALJ's finding. *Allen v. Heckler*, 749

15  F.2d 577, 579 (9th Cir. 1984).

16  　　　The ALJ relied on medical records inconsistent with plaintiff's subjective

17  complaints. AR 57-58. Plaintiff contends that the ALJ erred because some of the

18  evidence in the record supported plaintiff's subjective complaints. The ALJ is

19  responsible for weighting the medical evidence and resolving conflicts in the evidence.

20  As discussed above, the ALJ did not err by discounting Dr. Hander's opinion. The fact

21  that the medical evidence lends itself to more than one rational interpretation is

22  insufficient grounds to reverse the decision of the ALJ concerning plaintiff's testimony

23  about physical limitations.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

1    With respect to mental health conditions, as discussed above, the ALJ

2    erroneously determined that Dr. Wingate's opinion was not supported by the medical

3    record. Therefore, when the ALJ discounted plaintiff's symptom testimony about mental

4    health conditions, this was error.

5        D.  <u>Harmless Error</u>

6        Harmless error principles apply in the Social Security context. *Molina v. Astrue*,

7    674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to

8    the claimant, or if it is "inconsequential" to the ALJ's "ultimate nondisability

9    determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006);

10   *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless

11   requires a "case-specific application of judgment" by the reviewing court, based on an

12   examination of the record made "'without regard to errors' that do not affect the parties'

13   'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S.

14   396, 407 (2009)).

15       In this situation, the error regarding Dr. Wingate's opinion is not harmless. The

16   ALJ found that plaintiff could "understand, remember and apply detailed, but not

17   complex, instructions, but not in a fast-paced, production type environment." AR 56.

18   However, this limitation to non-complex instructions does not account for difficulty in

19   maintaining concentration through an entire workday or the amount of time off task that

20   plaintiff may require. Additionally, properly weighing Dr. Wingate's opinion could change

21   the ALJ's assessment of plaintiff's testimony about mental health symptoms, and may

22   affect the hypotheticals provided to a Vocational Expert; this would potentially change

23   the RFC. Therefore, the ALJ's errors are not harmless.

24

25

1

2          E.  Remand for Further Proceedings

3          "'The decision whether to remand a case for additional evidence, or simply to award

4   benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682

5   (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an

6   ALJ makes an error and the record is uncertain and ambiguous, the court should

7   remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

8   (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

9   the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

10  at 668.

11          The Ninth Circuit has developed a three-step analysis for determining when to

12  remand for a direct award of benefits. Such remand is generally proper only where

13          "(1) the record has been fully developed and further administrative
           proceedings would serve no useful purpose; (2) the ALJ has failed to
14          provide legally sufficient reasons for rejecting evidence, whether claimant
           testimony or medical opinion; and (3) if the improperly discredited
15          evidence were credited as true, the ALJ would be required to find the
           claimant disabled on remand."

16  *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

17  2014)).

18          The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

19  satisfied, the district court still has discretion to remand for further proceedings or for

20  award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017). In this case, there is ambiguity

21  because upon re-evaluation of Dr. Wingate's opinion, the ALJ may decide to alter the

22  RFC or may apply a new interpretation of the existing record. Accordingly, there are

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

1   outstanding issues which must be resolved and remand for further proceedings is

2   appropriate.

3                                    CONCLUSION

4           Based on the foregoing discussion, the Court finds that the ALJ committed

5   harmful error when reviewing the Dr. Wingate's opinion. Defendant's decision to deny

6   benefits is therefore REVERSED and this matter is REMANDED for further

7   administrative proceedings.

8           Dated this 29th day of March, 2021.

9

10

11                                              *Theresa L. Fricke*

12                                              Theresa L. Fricke
                                                United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25